The Court

(present, Burke, Waties, and Bay, Justices)
took time to consider this case ; and after mature deliberation, were of opinion that this court had not jurisdiction of the cause. That with regard to the first point, submitted by the pleadings, they were decidedly of opinion, that there jnight be cases v/here duress of goods would avoid p, man’s act; and that there was nothing from 2 Inst. 483. *475 and 1 Black. 131. to the contrary. Both Lord Coke and Judge Blackstone lay down the principles of law generally, without recurring to exceptionable cases out of the general rule. The very reason they assign, appears to confirm this opinion. They both say that duress of goods will not avoid a man’s deed ; because the party injured may have adequate satisfaction in damages for the injury. This then obviously presupposes two things : 1st. Ability in the person or persons to make recompense. 2dly. A prompt and effectual method to compel this satisfaction. But where these essentials are wanting, the reason ceases, and with it, the principles on which the law was founded. Had either of these great sages of the law. contemplated, in the cases quoted, the inability of persons to make compensation, or a want of a speedy tribunal to compel it to be made ; they would, no doubt, have laid down principles applicable to such cases, and that too, very different from those relied on by the plaintiff’s counsel. Besicles, it is too obvious, that the immediate necessities of a man may be so great and urgent, as not to admit of ordinary modes of redress, however able the party might be to make satisfaction. It would, therefore, be extremely hard to say that in cases of this sort, even where the party is sufficiently able, that duress of goods should not avoid a man’s act. The reason in the case of Astley v. Reynolds is very strong to this point. There, the court said the party paid his money relying on his legal remedy to recover it back again. It is clear then, that where-ever assumpsit will lie for money extorted by this kind of duress of goods, a party may defend himself against any claim upon him for money to be paid in consequence of any contract made under similar circumstances.
2. As to the second point, the court said it was a very clear rule of law, that the municipal courts of a country could not take cognisance of matter which was to be determined by theyhs belli, which was a part of the law of nations ; and therefore, every thing relating to, or governed hyit, must be determined by that court which has (he general jurisdiction of such cases*; which, by the common con *476 sent of all nations, belonged to the admiralty jurisdiction^ They said Leceaux & Eden’s case, and the authorities there referred to, together with the reasoning and opinions of the . , . , judges upon them, were so strong and conclusive upon this head, that it was needless to do more than to refer to the case itself.
3.- On the third point, the court were equally clear, that the notes in., question were only evidences of a contract made at a sale of the rum as a lawful prize ; and therefore formed such an incident as naturally brought them within the admiralty jurisdiction, which had the original cogni-sance of the question of prize or no prize. It was admitted by all parties, that the rum in question, was shipped on board the British, sloop Bell, a? the property of the defendants, who- were American citizens — that it was seized by a French privateer, brought into the port of Charleston, and ordered, by the French consul, to be sold as lawful prize ; and that at this sale, the defendants purchased it, and gave their notes for the purchase-money, in order to get possession of the rum. These notes then, were evidently the last links in- the chain of events, which was fastened to the admiralty jurisdiction originally, and which could not be severed from the others- without the most glaring injustice to the defendants ; for it. must be obvious that the validity of this contract depended upon the legality of the prize. If the rum still remained the property of the defendants, there was no one principle of law or justice existing, which could- make them pay for what was their own before, or which could support or defend any contract made to pay for it. If, on the contrary, the rum vested in the captors, then the contract was binding; which still involved in it the consideration of prize or no prize, and brought it back to the admiralty jurisdiction, to which it originally belonged. The case of Leceaux v. Eden was strong in point: that was an action of false imprisonment, brought by the second mate of a ship which was taken as a prize by the defendant, who was commander of a letter of marque.. The ship and cargo *477 were afterwards liberated by the admiralty, and the captor condemned in costs and damages ; upon which the plaintiff brought this action, as he had been confined on board. The ° action of false imprisonment was apparently a common law case, as much so as the present one on the notes of hand, appeared to be. But the court, in that case, did not sustain it; because it was an incident springing out of a cause originally of admiralty jurisdiction ; and they said, that wherever the injury is the natural consequence of the capture, the admiralty has the sole and exclusive jurisdiction. The case of the pirates was also strong : there, goods were taken at sea, and sold on land ; and it was contended, that this sale on land, made a contract cognisable at common law; but the court adjudged otherwise — that as the original taking belonged to the admiralty, every thing which was incidental to, or sprung out of it, should belong to it also. So in Turner & Carey’s case, against Nele, (1 Leo. 243. 1 Sid. 367.) where an Ostender was taken for a Dutch ship, and brought into port, and libelled as prize ; but restored to the owners. The Ostenders libelled in the court of admiralty, for damages which the ship sustained while in port, and a prohibition was prayed; but refused, on the ground that the original was a capture at sea, and the bringing into port, in order to have her condemned as a prize, is but a consequence of it; therefore, not only the original, but the consequences, shall be tried by the admiralty; so the prohibition was refused. All these cases, and many others referred to, go to establish the principal point contended for by the defendants — that whatever is an incident springing out of a prize case shall, as well as the original capture, be tried by the admiralty jurisdiction.
The court said they would take notice of one thing more in this case, lest their silence upon it might be construed into an acquiescence of the principle laid down by the counsel for the plaintiff, in the course of the arguments, and quoted from Vat lei: “ That a seizure as prize, and twenty- “ four hours possession by the captors, or bringing the u prize into a place of safety, vested the property in the *478 “captors.” (Vattel, 571, 572.) This, they said, was a doctrine they by no means assented to. In the case of Lindo v. Rodney, (Doug. 591.) Lord Mansfield, in one of the most learned and elegant opinions he ever delivered in Westminster-Hall, as the unanimous opinion of the King’s Bench, declares, that after searching the admiralty records from the earliest periods, and examining all the treaties and marine laws then existing, (in 1781,) the court was decidedly of opinion, that no property vests in any goods taken at sea or land, till a sanction of condemnation. That the marine ordinances of France, their instructions to their captains of private ships of war, and a variety of subsisting treaties for one hundred years past, all confirm the position, that no one is to sell, or purchase, before the admiral, &c. shall have declared the ship or goods taken, to be good and lawful prize. Lord Mansfield, in the same opinion, says, that mutual convenience, eternal principles of justice, the wisest regulations of policy, and the consent of all nations, have established a system of procedure, a code of laws, and a court for the trial of prize or no prize. After all these authorities, and the reason of the thing itself, which appears to be a part of the acknowledged law of nations on the subject, a bare dictum of Vattel, that twenty-four hours possession vests the property in the captors, however respectable his authority may be in other respects is not of sufficient weight to justify the position contended for; especially, when it is recollected that he borrowed the idea from Grotius, who wrote about two centuries ago, when commerce and navigation were extremely circumscribed indeed, and when mercantile transactions were very little known, and less attended to by those who had the direction of national transactions. Besides, as a very ingenious author observes, “ both Puffendorf and Grotius are of too fo- “ rensic a cast, to be admitted of general use at this day. “ They are too much mixed up with the civil law and the “ customs of Germany, to answer the present exigencies of M trade, or extension of commerce.” A variety of treaties, *479 conventions, and customs, have been introduced since, by the modern commercial nations, in favour of trade, and their mutual intercourse with each other; that the law of nations has almost entirely changed from what it was two centuries ago. If this doctrine should really prevail, and be considered as . the general law of nations at this day, no property at sea would be safe ; it would all be in the power of captors, to be disposed of at pleasure, without regard to the rights of neutrals, friends, or fellow-citizens. How could the property of persons of this description be distinguished, ascertained, or reclaimed, unless there was some tribunal of competent jurisdiction to investigate and determine the right ? How could those rights be protected, or the faith of treaties observed, without some mode of examination, or power to compel restitution ? Such a doctrine, as has already been observed, would really lay every thing prostrate on the ocean, at the mercy of armed vessels and ships of war. An investigation, therefore, in a court of competent jurisdiction, to adjudge and condemn what is lawful prize, appears from the best authorities, and wisest regulations of nations, to be absolutely necessary, before the property can be devested out of the original owner. Upon the whole, the court were of opinion, that the demurrer in this case ought to be sustained, • which will injure neither party; but leave the question of prize or no prize, with all its incidents, to the admiralty, which had the original jurisdiction of the cause, and among them, the contract in question.